1  Michael C. Keats (*pro hac vice*)
2  Samuel M. Light (*pro hac vice*)
   Nicholas D. Winkley (*pro hac vice*)
3  **Fried Frank Harris Shriver**
       **& Jacobson LLP**
4  One New York Plaza
   New York, NY 10004
5  Telephone: (212) 859-8000
   Email: michael.keats@friedfrank.com
6          samuel.light@friedfrank.com
           nicholas.winkley@friedfrank.com
7

8  Jeffrey G. Knowles (State Bar No. 129754)
   Christopher J. Wiener (State Bar No. 280476)
9  Bina G. Patel (State Bar No. 315352)
   **Coblentz Patch Duffy & Bass LLP**
10 One Montgomery Street, Suite 3000
   San Francisco, California 94104-5500
11 Telephone: 415.391.4800
   Facsimile: 415.989.1663
12 Email:   ef-jgk@cpdb.com
            ef-cjw@cpdb.com
13          ef-bgp@coblentzlaw.com
14

15 *Counsel for Defendants Mohammad Emad Mostaque;*
   *Stability AI Inc.; and Stability AI Ltd.*
16

17            **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
18             **SAN FRANCISCO DIVISION**

19 CYRUS HODES,
                                           CASE NO. 3:23-cv-03481-MMC
20     Plaintiff,
                                           **DEFENDANTS MOHAMMAD EMAD**
21     v.                                  **MOSTAQUE, STABILITY AI, INC., AND**
                                           **STABILITY AI LTD'S NOTICE OF**
22                                         **MOTION AND MOTION TO DISMISS;**
                                           **MEMORANDUM OF POINTS AND**
23 MOHAMMAD EMAD MOSTAQUE,                 **AUTHORITIES**
   STABILITY AI INC., a Delaware
24 Corporation, and STABILITY AI LTD., a
   UK Corporation,                         Date:     December 1, 2023
25                                         Time:     9:00 am
       Defendants.                         Place:    Courtroom 7, 19th Floor
26                                         Before:   Hon. Maxine M. Chesney
27

28

1
2
3
4
5
6

**PLEASE TAKE NOTICE** that on December 1, 2023, at 9:00am, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom 7, 19th Floor, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendants Mohammad Emad Mostaque, Stability AI, Inc. and Stability AI Ltd., through their undersigned counsel, will, and hereby do, move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure ("FRCP" or "Rule") 12(b)(2), 12(b)(6), 12(b)(7), and/or 19.

7
8
9
10
11

Defendants' Motion to Dismiss ("Motion") is based on this Notice, the supporting Memorandum of Points and Authorities, the Declarations of Mohammad Emad Mostaque and Michael C. Keats, Esq. and the exhibits thereto, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

12

**Issues to be Decided:**

13

1.      Whether this Court has personal jurisdiction over Defendants.

14

2.      Whether Defendant Mostaque is a necessary party that cannot feasibly be joined.

15

3.      Whether Plaintiff has adequately alleged a claim upon which relief can be granted.

16
17
18

**Relief Sought:** Defendants seek an order dismissing all claims against them under Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and/or Rule 12(b)(7) for failure to join a party under Rule 19.

19
20
21
22
23
24
25
26

Dated: October 16, 2023

Respectfully submitted,

*s/ Christopher J. Wiener*

Christopher J. Wiener (State Bar No. 280476)

**Coblentz Patch Duffy & Bass LLP**
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Email: ef-cjw@cpdb.com

27
28

1

**<u>TABLE OF CONTENTS</u>**

I.    PRELIMINARY STATEMENT ..................................................................... 3

II.   STATEMENT OF RELEVANT FACTS ....................................................... 4

III.  LEGAL STANDARDS ................................................................................ 6

      A.    Lack of Personal Jurisdiction .......................................................... 6

      B.    Failure to Join an Indispensable Party............................................ 7

      C.    Failure to State a Claim Upon Which Relief May Be Granted .............................. 7

IV.   ARGUMENT ............................................................................................... 8

      A.    This Court Lacks Personal Jurisdiction Over Mostaque ....................................... 8

      B.    Mostaque is a Necessary and Indispensable Party ................................. 14

      C.    This Court Also Lacks Personal Jurisdiction Over the Stability
            Entities............................................................................................... 15

      D.    Hodes Fails to State a Claim Upon Which Relief Can Be Granted ...................... 17

CONCLUSION ......................................................................................................... 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accelerant Twister, LLC v. Marjo, LLC*,
No. CV 22-1366-RGA, 2023 WL 4457422 (D. Del. July 11, 2023) ...................................... 24

*Air Prod. & Chemicals, Inc. v. Wiesemann*,
237 F. Supp. 3d 192 (D. Del. 2017) ....................................................................................... 21

*Alberici v. Recro Pharma, Inc.*,
No. CV 18-2279, 2020 WL 806719 (E.D. Pa. Feb. 14, 2020) ................................................ 20

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ................................................................................................. 7

*Ameristar Casinos, Inc. v. Resorts Int'l Holdings, LLC*,
No. CIV.A. 3685-VCS, 2010 WL 1875631 (Del. Ch. May 11, 2010) ................................... 24

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,
1 F.3d 848 (9th Cir. 1993) ..................................................................................................... 14

*Arnold v. Soc'y for Sav. Bancorp, Inc.*,
650 A.2d 1270 (Del. 1994) ..................................................................................................... 19

*Arwood v. AW Site Servs., LLC*,
No. CV 2019-0904-JRS, 2022 WL 705841 (Del. Ch. Mar. 9, 2022) ..................................... 23

*Asahi Metal Indus. Co. v. Superior Court*,
480 U.S. 102 (1987) ................................................................................................................ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 20

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ................................................................................................ 10

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ................................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................................. 8

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ................................................................................................ 11

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) ......................................................................................................... 13, 16

*Caruth v. Int'l Psychoanalytical Ass'n*,
    59 F.3d 126 (9th Cir. 1995) ................................................................................................ 14

*Clark v. Davenport*,
    No. CV 2017-0839-JTL, 2019 WL 3230928 (Del. Ch. July 18, 2019) ................................. 24

*Corp. Prop. Assocs. 14 Inc. v. CHR Holding Corp.*,
    No. CIV.A 3231-VCS, 2008 WL 963048 (Del. Ch. Apr. 10, 2008) ...................................... 21

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ........................................................................................................ 7, 9

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) .................................................................................................. 8

*Davis v. Cranfield Aerospace Sols., Ltd.*,
    71 F.4th 1154 (9th Cir. 2023) ............................................................................................... 11

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
    276 F.3d 1150 (9th Cir. 2002) ............................................................................................... 15

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009) ................................................................................................ 8

*Dow Chem. Co. v. Calderon*,
    422 F.3d 827 (9th Cir. 2005) ................................................................................................ 16

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ................................................................................................. 20

*EEOC v. Peabody W. Coal Co.*,
    400 F.3d 774 (9th Cir. 2005) ............................................................................................ 7, 14

*Fin Cap Inc. v. PayNerd LLC*,
    No. N21C-12-118 MMJ CCLD, 2023 WL 5543736 (Del. Super. Ct. Aug. 16,
    2023) .................................................................................................................................. 22

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ............................................................................................ 7, 10, 12

*Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*,
    905 F.3d 597 (9th Cir. 2018) ................................................................................................ 13

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*,
    No. CV 7906-VCG, 2018 WL 6311829 (Del. Ch. Dec. 3, 2018) ......................................... 23

*Griffin Dewatering Corp. v. B.W. Knox Const. Corp.*,
    No. CIV. A. 98L-09-008, 2001 WL 541476 (Del. Super. Ct. May 14, 2001) ...................... 24

*Hall v. Nat'l Serv. Indus., Inc.*,
    172 F.R.D. 157 (E.D. Pa. 1997) ................................................................................. 15

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
    791 F.3d 90 (D.C. Cir. 2015) ..................................................................................... 20

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023) .................................................................................... 10

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ............................................................................................ 7, 9, 16

*Howard v. Tanium, Inc.*,
    No. 21-CV-09703-JSC, 2023 WL 2095908 (N.D. Cal. Feb. 17, 2023) ...................... 20

*Iconlab Inc. v. Bausch Health Companies Inc.*,
    No. 8:16-CV-01321-JLS-KES, 2019 WL 12521292 (C.D. Cal. May 15, 2019),
    *aff'd*, 828 F. App'x 363 (9th Cir. 2020) ................................................................... 15

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ..................................................................................................... 7

*Jeong v. Nexo Fin. LLC*,
    No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ...................... 15

*King v. Bumble Trading, Inc.*,
    No. 18-CV-06868-NC, 2020 WL 663741 (N.D. Cal. Feb. 11, 2020) .......................... 9

*Lank v. Steiner*,
    224 A.2d 242 (Del. 1966) .......................................................................................... 19

*Mallory v. Norfolk S. Ry. Co.*,
    143 S. Ct. 2028 (2023) ............................................................................................... 14

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ..................................................................................... 12

*Miracle Ventures I, LP v. Spear*,
    No. 21 CIV. 8941 (LGS), 2022 WL 16578962 (S.D.N.Y. Nov. 1, 2022) .............. 19, 21

*Morrill v. Scott Fin. Corp.*,
    873 F.3d 1136 (9th Cir. 2017) ................................................................................... 11

*N. Star Int'l v. Arizona Corp. Comm'n*,
    720 F.2d 578 (9th Cir. 1983) ....................................................................................... 7

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002) .................................................................................... 20

*New Enter. Assocs. 14, L.P. v. Rich*,
  292 A.3d 112 (Del. Ch. 2023) .................................................................................... 18

*New Enter. Assocs. 14, L.P. v. Rich*,
  295 A.3d 520 (Del. Ch. 2023) .................................................................................... 18

*In re Nine Sys. Corporation Shareholders Litig.*,
  No. CIV.A. 3940-VCN, 2014 WL 4383127 (Del. Ch. Sept. 4, 2014), *aff'd sub
  nom. Fuchs v. Wren Holdings, LLC*, 129 A.3d 882 (Del. 2015) ...................... 21, 22

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ........................................................... 10, 11, 12

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ........................................................... 10, 11

*Promedev, LLC v. Wilson*,
  No. C22-1063JLR, 2023 WL 2330377 (W.D. Wash. Mar. 2, 2023) ................... 22

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ........................................................................... 6

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ........................................................................ 7

*Serje v. Rappi, Inc.*,
  No. 19-CV-07415-VC, 2021 WL 2633536 (N.D. Cal. June 25, 2021) ................. 14

*SIC Metals, Inc. v. Hyundai Steel Co.*,
  No. SACV 18-00912-CJC(PLAx), 2018 WL 6842902 (C.D. Cal. Sept. 14,
  2018) .......................................................................................... 16

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
  911 A.2d 362 (Del. 2006) ............................................................... 18

*Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ........................................................................ 8

*Teetex LLC v. Zeetex, LLC*,
  No. 20-CV-07092-JSW, 2022 WL 17420385 (N.D. Cal. Dec. 5, 2022) .............. 12

*Tekstrom, Inc. v. Savla*,
  No. CIV.A. 05A-12-006 (JTV), 2006 WL 2338050 (Del. Super. Ct. July 31,
  2006), *aff'd*, 918 A.2d 1171 (Del. 2007) .............................................. 23

*Terra Tech Corp. v. Vandevrede*,
  No. SACV 18-602 JVS (JDEx), 2018 WL 6016162 (C.D. Cal. Aug. 3, 2018) ........... 8, 9

*United States v. Bowen*,
  172 F.3d 682 (9th Cir. 1999) ............................................................. 7

*United States v. Corinthian Colleges,*
   655 F.3d 984 (9th Cir. 2011)..................................................................................... 23

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003)....................................................................................... 5

*Urdan v. WR Cap. Partners, LLC,*
   244 A.3d 668 (Del. 2020)........................................................................................... 23

*Vatidis v. Trimble, Inc.,*
   No. CV 18-998 (MN), 2019 WL 3546693 (D. Del. Aug. 5, 2019)........................... 22

*In re Verisign, Inc., Derivative Litig.,*
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) .................................................................... 17

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003)..................................................................................... 8

*Voss v. Sutardja,*
   No. 14-CV-01581-LHK, 2015 WL 349444 (N.D. Cal. Jan. 26, 2015).................... 17

*Walden v. Fiore,*
   571 U.S. 277 (2014) ............................................................................................ 7, 10

*In re Wayport, Inc. Litig.,*
   76 A.3d 296 (Del. Ch. 2013)............................................................................*passim*

*Weston Fam. P'ship LLLP v. Twitter, Inc.,*
   29 F.4th 611 (9th Cir. 2022)...................................................................................... 20

*Zinser v. Accufix Rsch. Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001).................................................................................. 17

**Statutes**

Cal. Corp. Code § 2116 .................................................................................................. 17

**Other Authorities**

Fed. R. Civ. P. 9(b)................................................................................................... 8, 23

Fed. R. Civ. P. 12(b)........................................................................................................ 6

Fed. R. Civ. P. 12(b)(2).................................................................................................... 6

Fed. R. Civ. P. 12(b)(6).................................................................................................... 7

Fed. R. Civ. P. 12(b)(7).................................................................................................... 7

Fed. R. Civ. P. 19 .................................................................................................. 3, 7, 14

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    PRELIMINARY STATEMENT

3      Plaintiff Cyrus Hodes suffers from a clear case of seller's remorse. He has initiated this

4  action as a last-ditch effort to undo a fair, arm's-length business transaction. After the

5  Covid-19-related projects that he led at the start-up Stability AI companies failed, Hodes demanded

6  to terminate his consulting agreement and was determined to return his shares in Defendant Stability

7  AI, Inc. ("Stability US") for just $100—the exact price he paid for them. Hodes readily admits that

8  he sought out Defendant Emad Mostaque (the companies' founder) to sell his shares, that he had his

9  own motivations for selling at the time he did (*i.e.*, his supposed "personal liability and reputation"),

10  and that he set his own price. But now that the Stability AI companies have successfully pivoted to

11  a new and nascent business, Hodes asks this Court to relieve him of his own bargain and reward

12  him with a windfall. Hodes's remarkable claims fail as a matter of law.

13      To begin, this Court need not consider the merits of Hodes's claims because he cannot

14  establish personal jurisdiction over any of the Defendants. At bottom, this case is about a Florida

15  resident (Hodes) who alleges that a citizen and resident of the United Kingdom (Mostaque) made

16  certain misrepresentations and omissions from the United Kingdom in connection with Stock

17  Purchase Agreements for shares of a Delaware corporation (Stability US) that Hodes negotiated and

18  signed while in Florida. The Stock Purchase Agreements' forum selection clauses, by their own

19  terms, do not apply to Hodes's extra-contractual claims, and even if they did, they would designate

20  Stability US's principal place of business—London, England—as the appropriate forum. Nothing

21  connects this dispute to California. This Court should dismiss this action for lack of personal

22  jurisdiction.

23      Moreover, the lack of personal jurisdiction over Mostaque alone dooms the entire action.

24  Mostaque, in his personal capacity, is the only party to the Stock Purchase Agreements with Hodes.

25  He is the only party alleged to have made any misrepresentations or owed any duties to Hodes.

26  Mostaque is thus a necessary and indispensable party beyond this Court's jurisdiction. This Court

27  should dismiss this action because Hodes is unable to join a necessary party under Rule 19.

28      Even if Hodes could establish personal jurisdiction (and he cannot), Hodes fails to

adequately allege a plausible claim, let alone meet the heightened pleading standard that his fraud-based claims demand. Hodes alleges that he sold his shares in two tranches, selling 800,000 of his shares in October 2021 to Mostaque, and the remaining 200,000 shares in May 2022. Hodes's causes of action are based on Mostaque's alleged failure to disclose in October 2021 that the Company's internal research and development efforts regarding a generative imaging business might ultimately bear fruit in August 2022, and his alleged early discussions with potential investors in May 2022 (which are not even alleged to have occurred in October 2021). But Hodes expressly waived his right to receive company information during his initial purchase of the stock. And even if he had not waived his right to information, Delaware law (which governs Hodes's claims) does not impose any fiduciary duty to disclose in a private stock sale between a director and a minority shareholder. Finally, Hodes's own Complaint undermines any claim of scienter or justifiable reliance given that it regularly cites Mostaque's public disclosures on Twitter of images produced by generative imaging models. This Court should dismiss this action for failure to state a claim upon which relief can be granted.

With the benefit of hindsight, Hodes regrets his decision to sell the stock. That much about this case is clear. But regret is not actionable. This Court should not allow Hodes, a Florida resident, to transform his regret into a basis for dragging a resident of England, a United Kingdom Corporation, and a Delaware Corporation into this California forum. For these reasons, the Complaint should be dismissed in its entirety, with prejudice.

## II.      STATEMENT OF RELEVANT FACTS

Defendant Mohammad Emad Mostaque ("Mostaque") is the President, CEO, and founder of Stability AI, Inc. ("Stability US") and Stability AI, Ltd. ("Stability UK," and with Stability US, the "Stability Entities"). Compl. ¶ 19. Stability US is a Delaware holding corporation with its principal place of business in London, England. Compl. ¶ 20; Mostaque Decl. ¶¶ 11, 13. Stability UK is a wholly owned subsidiary of Stability US, and is the operating entity that has its principal place of business in London, England. Mostaque Decl. ¶¶ 12–13.

Plaintiff Cyrus Hodes ("Hodes") resides in Boca Raton, Florida. Compl. ¶ 18. Hodes was retained as a consultant and independent contractor for Stability US under an October 2020

Consulting Agreement ("Consulting Agreement"). Keats Decl., Ex. A.[1] Hodes bought 1,000,000 shares from Stability US for $100 in accordance with an October 2020 Common Stock Purchase Agreement between Stability US and Hodes ("2020 SPA"). *See* Compl. ¶¶ 35–36; Keats Decl., Ex. B. Hodes does not attach the 2020 SPA to his Complaint (or, for that matter, *any* of the contracts that form the basis of his allegations and for which he seeks rescission), likely because the 2020 SPA expressly provides that Hodes "has no right to receive any information from the Company by virtue of [his] purchase of the Stock, ownership of the Stock, or as a result of [his] being a holder of record of stock of the Company." Keats, Decl., Ex. B at 3.

As an independent contractor, Hodes pursued several projects to "harness the power of AI." Compl. ¶¶ 38–40. As alleged in his Complaint, after the Covid-19-related project that Hodes was part of failed, he blamed Mostaque and worried about "damaging his reputation in the AI community." *Id.* ¶ 66. Deciding that he "needed to extricate himself from Stability AI," Hodes demanded that Mostaque terminate his Consulting Agreement and insisted on selling his Stability US stock "for the same price that he paid for the shares." *Id.* ¶¶ 71–72, 75.

The sale of Hodes's stock took place on two dates: October 4, 2021 and May 21, 2022. *Id.* ¶ 74. Three days before the October 2021 sale, Mostaque informed Hodes that "Stability AI would not be wound down." *Id.* ¶ 77. Hodes, with full knowledge and understanding that Mostaque intended to keep the business up and running, "remained willing to sell his shares in Stability [US] at the same price that he purchased them." *Id.* ¶ 78. Under the October 4, 2021 Stock Purchase Agreement ("October 2021 SPA"), Hodes sold 800,000 Stability US shares directly to Mostaque, in his personal capacity, for $80. Compl. ¶¶ 79–80; Keats Decl., Ex. C. The October 2021 SPA was executed by Hodes while he lived in Boca Raton, Florida and while Mostaque lived in London, England. Keats Decl., Ex. C.

Before the October 2021 sale, in June 2021, Mostaque informed Hodes that he was acquiring "certain highly sophisticated computer processors . . . in order to enhance Stability AI's ability to

---

[1] The Court may consider these exhibits under the doctrines of incorporation by reference or the doctrine of judicial notice because they are referenced extensively in the Complaint and are integral to Hodes's claims. *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

improve and expedite machine learning." *Id.* ¶¶ 85–86. Then, in September 2021 and over the next few months, Mostaque shared on Twitter that he had created AI-generated images. *See id.* ¶¶ 88, 90, 92, 106. Mostaque even shared about these "AI art models" in May 2021, the same month that Hodes entered into the second stock sale. *Id.* ¶ 106.

On May 21, 2022, after all of those very public disclosures, Hodes executed a Stock Purchase Agreement ("May 2022 SPA") selling his remaining 200,000 Stability US shares to Mostaque for $20. *Id.* ¶ 102; Keats Dec., Ex. D. Like the October 2021 SPA, Hodes sold his shares in a Delaware company with a principal place of business in London directly to Mostaque while Hodes resided in Boca Raton, Florida, and Mostaque resided in London, England. Keats Dec., Ex. D.

In October 2022, the Stability Entities issued a press release announcing that they had closed a $101 million fundraising round. Compl. ¶ 110. Hodes hypothecates, with no supporting evidence, that "by May 2022, Stability AI had already begun discussions with investment banks and venture capital firms about fundraising millions of dollars at a massive valuation." *Id.* ¶ 109. The Complaint does not allege that any investors agreed on any specifics at that time, nor any time until at earliest August 2022, when Hodes asserts, again solely on information and belief, that "[t]hose discussions culminated in an August 2022 seed round . . . ." *Id.* ¶ 110.

On December 27, 2022, Hodes sent Defendants a letter asserting that Mostaque and Stability US had violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in connection with the repurchasing of his shares. Keats Decl., Ex. E. By letter, dated January 18, 2023, Defendants denied those allegations. *Id.*, Ex. F. Hodes never substantively responded to the January 18, 2023 letter before filing this lawsuit in July 2023.

## III.   LEGAL STANDARDS

### A.   Lack of Personal Jurisdiction

Under Rule 12(b) of the Federal Rules of Civil Procedure, a court must dismiss an action where it does not have personal jurisdiction over a defendant. FED. R. CIV. P. 12(b)(2). Personal jurisdiction is an "essential element" of a court's ability to hear a case, "without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). Hodes bears the burden of proving that personal jurisdiction over Defendants is appropriate.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In doing so, Hodes's allegations of jurisdictional facts must be supported by "competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010). And although uncontroverted allegations must be taken as true, "disputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).

For courts to exercise personal jurisdiction over a nonresident defendant, the defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts may be established via general jurisdiction or specific jurisdiction. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). General jurisdiction arises when a defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations omitted). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation" rather than "the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (internal quotations omitted).

### B.    Failure to Join an Indispensable Party

Under Rule 12(b)(7) an action may be dismissed for failure to join a required party under Rule 19, which "governs compulsory party joinder in federal district courts." *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir. 2005). Courts use a three-step process to determine whether to dismiss an action under Rule 19. *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). "First, the court must determine whether the absent party is 'necessary.'" *Id.* (citing FED R. CIV. P. 19). Second, "[i]f the absent party is 'necessary,' the court must determine whether joinder is 'feasible.'" *Id.* (citing FED R. CIV. P. 19). "Finally, if joinder is not 'feasible,' the court must decide whether the absent party is 'indispensable,' *i.e.*, whether in 'equity and good conscience' the action can continue without the party." *Id.* (citing FED R. CIV. P. 19(b)).

### C.    Failure to State a Claim Upon Which Relief May Be Granted

A Rule 12(b)(6) motion "test[s] the legal sufficiency of the complaint." *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). To be legally sufficient, a plaintiff must

1   allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

2   action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, when a

3   complaint "sound[s] in fraud," the plaintiff must meet the heightened pleading standard of Rule

4   9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Averments of fraud

5   "must identify the who, what, when, where, and how of the misconduct charged, as well as what is

6   false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v.*

7   *Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).

8   **IV.   ARGUMENT**

9       **A.   This Court Lacks Personal Jurisdiction Over Mostaque**

10          Hodes's boilerplate allegations do not establish personal jurisdiction over Mostaque, who,

11   at all relevant times, was a United Kingdom citizen residing in London, England. Mostaque has

12   never consented to suit in California, nor is he "at home" there. There is no basis for specific personal

13   jurisdiction over Mostaque who, while residing in London, repurchased Hodes's shares in a

14   Delaware company while Hodes resided in Florida. This case has no connection to California.

15          **1.   Mostaque Did Not Consent to Personal Jurisdiction in California**

16          Hodes alleges that Mostaque consented to personal jurisdiction in California by the SPAs'

17   forum selection clauses. Compl. ¶¶ 23–24. This is wrong on two counts. *First*, the forum selection

18   clauses do not apply to Hodes's tort claims, and are limited to breach of contract claims (which are

19   not asserted here). *Second*, even if they did apply, the clauses dictate that the United Kingdom,

20   Stability US's principal place of business, is the proper forum for Hodes to litigate his claims.

21          The Ninth Circuit "appl[ies] federal contract law to interpret the scope of a forum-selection

22   clause even in diversity actions." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th

23   Cir. 2018). Under federal law, the scope of a forum selection clause is interpreted according to its

24   "plain language." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). The forum selection

25   clauses here only apply to actions "to interpret or enforce any provision *of this Agreement*." Keats

26   Dec., Exs. C, D (emphasis added). But Hodes's claims do not seek to interpret the SPAs, nor does

27   he seek to enforce any of their provisions. Instead, Hodes's claims are tort claims that all involve

28   alleged tortious conduct that would be *outside* the contracts, not contained within them. *See Terra*

1   *Tech Corp. v. Vandevrede*, No. SACV 18-602 JVS (JDEx), 2018 WL 6016162, at *6–7 (C.D. Cal.

2   Aug. 3, 2018) (finding forum selection clause did not confer personal jurisdiction over defendant

3   because the breach of fiduciary duty, conversion, and fraud claims did not arise out of the

4   interpretation of the agreement or relate to matters of performance). Because the claims in the

5   Complaint do not involve the interpretation or enforcement of any SPA provision, the forum

6   selection clauses do not and cannot confer personal jurisdiction over Mostaque.

7        Even if the forum selection clauses did apply, the parties did not designate California as the

8   chosen forum. The plain language of the clauses states that the parties agree to submit to the

9   jurisdiction of "the appropriate state or federal court for the district encompassing the company's

10  principal place of business." Keats Dec., Exs. C, D. The principal place of business of Stability US

11  is and has always been London, England. Mostaque Decl. ¶ 13. Despite acknowledging this fact,

12  Hodes tries to manufacture personal jurisdiction by alleging that Stability US had *two* principal

13  places of business "during the relevant time period in San Francisco, CA and in London, England."

14  Compl. ¶ 20. Notably, Hodes does not, because he cannot, provide an address for any Stability US

15  office in San Francisco, or anywhere else in California. Moreover, Hodes's baseless allegation is

16  directly contradicted by both Mostaque's sworn declaration and blackletter law. A corporation has

17  only one principal place of business: the place of the corporation's "nerve center," which is "where

18  a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S.

19  at 92–93 ("A corporation's 'nerve center,' usually its main headquarters, is a single place"). Stability

20  US's headquarters are in London, where its officers direct and control the company's activities. *See*

21  Mostaque Decl. ¶ 13; *King v. Bumble Trading, Inc.*, No. 18-CV-06868-NC, 2020 WL 663741, at *3

22  (N.D. Cal. Feb. 11, 2020) (finding plaintiffs provided no evidence "suggesting that California is

23  where [defendant]'s 'overall direction, control, and coordination' takes place"). Thus, California is

24  not the appropriate forum for this action.

25        **2.    This Court Lacks General Jurisdiction Over Mostaque**

26        Hodes concedes, as he must, that Mostaque is not "at home" in California. *Daimler*, 571

27  U.S. at 127. "Mostaque is an individual domiciled in London, England." Compl. ¶ 19. Mostaque

28  therefore is not subject to general personal jurisdiction in California as he maintains no domicile in

1    this forum. *See Ford Motor Co.*, 141 S. Ct. at 1024 ("[A]n individual is subject to general jurisdiction

2    in her place of domicile.").

### 3.  This Court Lacks Specific Jurisdiction Over Mostaque

4    For a state to exercise specific jurisdiction over a defendant, due process requires that "the

5    defendant's suit-related conduct . . . create a substantial connection with the forum State." *Walden*,

6    571 U.S. at 284. Indeed, "the plaintiff cannot be the only link between the defendant and the forum.

7    Rather, it is the defendant's conduct that must form the necessary connection with the forum State

8    that is the basis for its jurisdiction over him." *Id.* at 285. The exercise of specific jurisdiction is

9    appropriate only when a defendant: (1) purposefully directs its activities toward the forum or

10   purposefully avails itself of the forum; (2) the claim arises out of or relates to the defendant's forum-

11   related activities; and (3) the exercise of jurisdiction would be reasonable. *See Axiom Foods, Inc. v.*

12   *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). The plaintiff bears the burden to establish

13   the first two prongs. *Id.* at 1068. If satisfied, the burden would shift to the defendant to show that

14   jurisdiction "would not be reasonable." *Id.* at 1068–69. Hodes cannot establish the required factors.

### i.  Mostaque did not purposefully direct activities at California or purposefully avail himself of California forum.

17   The first prong of the specific-jurisdiction inquiry encompasses two separate concepts:

18   "purposeful direction" and "purposeful availment." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72

19   F.4th 1085, 1090 (9th Cir. 2023). The "purposeful direction" test applies when the claim "requires

20   an intentional tortious or 'tort-like' act" (*id.* at 1091), and courts "look to evidence that the defendant

21   has directed his actions at the forum state, even if those actions took place elsewhere." *Picot v.*

22   *Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). For claims sounding in contract, courts apply the

23   "purposeful availment" analysis, which asks "whether a defendant has purposefully availed himself

24   of the privilege of conducting activities within the forum State, thus invoking the benefits and

25   protections of its laws." *Id.* at 1212 (cleaned up). Hodes fails under either test.

26   **Purposeful Direction.** When examining purposeful direction, courts in the Ninth Circuit

27   assess whether a defendant has: (1) acted intentionally, (2) expressly aimed conduct at the forum

28   state, and (3) caused a harm which was foreseeably going to be suffered in the forum state. *Pebble*

1    *Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). "Harm suffered in the forum state is a

2    necessary element in establishing purposeful direction." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136,

3    1144 (9th Cir. 2017).

4    Hodes's failure to allege that his harm occurred in California "is dispositive" and this Court

5    "need not address the other elements of the purposeful direction test." *Davis v. Cranfield Aerospace*

6    *Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023). Hodes executed what he purports were the

7    fraudulent stock sales—and thus suffered his injury—while residing in Boca Raton, Florida (where

8    he continues to reside). Keats Decl., Exs. C, D. Indeed, the Complaint articulates no harm that

9    occurred in California. And even were this not independently dispositive, Hodes fails to allege any

10   way in which Mostaque "aimed his conduct" at California. Based on Hodes's own allegations,

11   Mostaque thus did not purposefully direct any activity toward California that relates to the SPAs.

12   **Purposeful Availment.** To establish purposeful availment, "[a] defendant must have

13   'performed some type of affirmative conduct which allows or promotes the transaction of business

14   within the forum state.'" *Picot*, 780 F.3d at 1212 (citations omitted). To determine whether sufficient

15   contacts with the forum state exist, courts consider "prior negotiations and contemplated future

16   consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.*

17   *Prior Negotiations.* In the Complaint, Hodes acknowledges that *he* was the one that initiated

18   discussions with Mostaque about selling his stock. Compl. ¶¶ 6, 72. These discussions occurred

19   while Mostaque resided in England and Hodes in Florida. *See* Keats Decl., Exs. C, D. Neither party

20   is alleged to have traveled to California for purposes of the SPAs. The contract negotiations thus

21   weigh against a finding of purposeful availment. *See Davis*, 71 F.4th at 1164 (finding no purposeful

22   availment in California when the plaintiff "initiated contact with [defendant] by phone and email"

23   and "[n]egotiations between the two parties continued remotely," except for one in-person meeting

24   in England).

25   *Contemplated Future Consequences.* Nothing about the SPAs' contemplated consequences

26   suggests that Mostaque sought to benefit from California's laws. The SPAs terminated the

27   connection, continuing relationship, and obligations between Hodes and all Defendants. Like any

28   other good, once a stock is sold, "the parties were to go their separate ways." *Boschetto v. Hansing*,

1    539 F.3d 1011, 1017 (9th Cir. 2008). There were thus no contemplated future consequences

2    involving California.

3        *Contract Terms.* The contract terms do not invoke the laws of California. Delaware law

4    governs the SPAs' enforcement and interpretation. *See* Keats Decl. Exs C, D. In fact, California

5    *never appears* in either agreement. *See Teetex LLC v. Zeetex, LLC*, No. 20-CV-07092-JSW, 2022

6    WL 17420385, at *6 (N.D. Cal. Dec. 5, 2022) (finding no purposeful availment where "[t]he

7    contract does not reference or implicate California"). Accordingly, the terms of the SPAs, which

8    lack any connection to California, weigh strongly against a finding of purposeful availment.

9        *Actual Course of Dealings.* Hodes does not allege that any of Mostaque's obligations under

10   the SPAs were performed in California. To the contrary, Hodes alleges that Stability UK wired funds

11   to Hodes's bank account in satisfaction of Mostaque's obligations under the SPAs. *See* Compl.

12   ¶¶ 80, 103. These facts weigh against a finding of purposeful availment. *See McGlinchy v. Shell

13   Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (holding court lacked jurisdiction where the contract

14   was negotiated in England, made no reference to California, and no authorized agents of the

15   company were alleged to have performed or executed any portion of the contract in California.).

16       Hodes fails to adequately establish that Mostaque has either purposefully directed his

17   activities at California or has purposefully availed himself of the California forum. For this reason

18   alone, this Court should dismiss the claims against Mostaque for lack of personal jurisdiction.

19   *Pebble Beach Co.*, 453 F.3d at 1155 ("[Plaintiff's] arguments fail under the first prong. Accordingly,

20   we need not address [the remaining two prongs]"). Even if the first prong had been met, Hodes still

21   fails to satisfy the second and third prongs of the test.

22            **ii.     Hodes's claims do not arise out of or relate to Mostaque's**

23                    **limited California contacts.**

24       The second prong of the specific jurisdiction analysis mandates that the plaintiff's claims

25   "arise out of or relate to the defendant's contacts with the forum." *Ford*, 141 S. Ct. at 1025. In other

26   words, "there must be an affiliation between the forum and the underlying controversy, principally,

27   an activity or an occurrence that [took] place in the forum State and is therefore subject to the State's

28   regulation." *Id.* As discussed above, nothing about Mostaque's alleged suit-related conduct creates

the necessary substantial connection with California. Mostaque resided (and still resides) in England and Hodes resided (and still resides) in Florida during the negotiation and execution of the SPAs for which Hodes seeks rescission. A court cannot exercise specific jurisdiction where a nonresident plaintiff, whose claims are based on conduct that occurred outside the forum, suffers no harm in the forum state. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 265 (2017) (holding that "California courts cannot claim specific jurisdiction" where "[t]he relevant plaintiffs are not California residents and do not claim to have suffered harm in that State."). Because Hodes alleges no connection between Mostaque's alleged tortious conduct and California, Mostaque cannot be subject to jurisdiction in this Court.

### iii.     Exercising jurisdiction over Mostaque would be unreasonable.

Even if this Court determines that Hodes somehow carried his burden of establishing both that Mostaque purposefully directed his conduct toward California and that Mostaque's California contacts gave rise to Hodes's alleged injuries, exercising personal jurisdiction over Mostaque is still improper because it would be unreasonable.

In evaluating reasonableness, courts in the Ninth Circuit balance seven factors: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018). Each of these factors strongly indicate that jurisdiction is unreasonable in California.

*First*, as discussed above, Mostaque has not purposefully injected himself into the forum state's affairs. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 984 (9th Cir. 2021) ("The purposeful interjection factor in the reasonableness analysis is 'analogous to the purposeful direction' factor"). *Second*, it would be unreasonably burdensome for Mostaque, who resides in England, to defend this case in California. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal

system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). *Third*, exercising jurisdiction over Mostaque raises comity concerns. *See Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993) ("Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction."). *Fourth*, California has no interest in adjudicating the dispute between a UK citizen and a Florida resident over the sale of shares in a Delaware company. *See Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2054 (2023) (Alito, J. concurring) ("[A] State generally does *not* have a legitimate local interest in vindicating the rights of non-residents harmed by out-of-state actors through conduct outside the State.") (emphasis in original). *Fifth*, because efficiency focuses on the location of the evidence and witnesses (*see Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995)), the most efficient judicial resolution would occur in the United Kingdom, not California. *See Serje v. Rappi, Inc.*, No. 19-CV-07415-VC, 2021 WL 2633536, at *3 (N.D. Cal. June 25, 2021) (holding that Columbia was the more convenient forum when "the witnesses and evidence implicated by the [alleged causes of action] are located in Colombia"). *Sixth*, Hodes is a resident of Boca Raton, Florida and traveling over 2,500 miles (as the crow flies) is neither convenient nor effective. *Finally*, the United Kingdom is feasible forum for Hodes's claims.

Mostaque's contacts drive the jurisdictional analysis and he does not have a *single* California contact that relates to Hodes's claims. Even if he did, exercising jurisdiction over him in California would be unreasonable given that he is a foreign citizen, Hodes is a Florida resident, the stock sale at issue was for a Delaware company, the alleged misrepresentations and omissions were made from the United Kingdom, and the SPAs at issue contain United Kingdom forum selection clauses. This Court should dismiss the claims against Mostaque for lack of personal jurisdiction.

### B.    Mostaque is a Necessary and Indispensable Party

Mostaque is a necessary and indispensable party under Rule 19 and the lack of personal jurisdiction over Mostaque dooms this entire action. A Rule 19 inquiry involves: (1) identifying the necessary absent parties; (2) determining whether joinder is feasible; and (3) choosing whether to proceed without them. *See* FED. R. CIV. P. 19(a)-(b); *Peabody W. Coal Co.*, 400 F.3d at 779–80.

Because Hodes seeks rescission of contracts to which only Mostaque is the counterparty, Mostaque is the quintessential necessary and indispensable party. Hodes seeks the *return* of the shares he sold to Mostaque. The only way to accomplish that objective is to undo the SPAs at issue—making the signatories to those SPAs necessary and indispensable parties. *See Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) ("[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."); *Iconlab Inc. v. Bausch Health Companies Inc.*, No. 8:16-CV-01321-JLS-KES, 2019 WL 12521292, at *6 (C.D. Cal. May 15, 2019), *aff'd*, 828 F. App'x 363 (9th Cir. 2020). By contrast, Stability US and Stability UK are not parties to the SPAs and are not alleged to have owed any duties to Hodes in connection with Mostaque's purchase of Hodes's shares. Finally, the fact that Hodes technically named, and hence technically joined, Mostaque as a defendant is of no moment. *See Hall v. Nat'l Serv. Indus., Inc.*, 172 F.R.D. 157, 158–59 (E.D. Pa. 1997) (finding plaintiff's "technical joinder" of the necessary and indispensable party did not circumvent the analysis required under Rule 19.) Because Mostaque is a necessary and indispensable party beyond this Court's jurisdiction, this action cannot proceed and must be dismissed in its entirety, including any and all claims against Stability US and Stability UK.

### C.     This Court Also Lacks Personal Jurisdiction Over the Stability Entities

Hodes's jurisdictional allegations against the Stability Entities similarly fail. These entities have not consented to jurisdiction in California for this matter, are not "at home" in California, and have no California contacts that are in any way related to the SPAs that underlie Hodes's claims. Hodes's allegation that the Stability Entities consented to jurisdiction in California is even more frivolous than his allegation that Mostaque did. Rather than point to the SPAs at issue, Hodes relies on the forum selection clause contained in the SPA memorializing his initial purchase of the Stability US shares back in October 2020, which was fulfilled the moment Stability US delivered shares to Hodes. *See* Compl. ¶ 23. But Hodes cannot plausibly claim that a defendant has consented to jurisdiction based on the forum selection clause in a *different* agreement separate from the SPAs for which Hodes seeks rescission. *See, e.g.*, *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *28 (N.D. Cal. Jan. 19, 2022). Neither Stability US nor Stability UK were a party to the

1   transactions that underlie Hodes's Complaint. *See SIC Metals, Inc. v. Hyundai Steel Co.*, No. SACV

2   18-00912-CJC(PLAx), 2018 WL 6842902, at *5 (C.D. Cal. Sept. 14, 2018) (stating that a company

3   that was not a party to a stock purchase agreement "did not have any obligations under that

4   agreement"). More to the point, as discussed above, because the language in all the SPAs is identical,

5   they each designate the United Kingdom as the appropriate forum. *See supra* § IV.A.1.

6       To the extent that Hodes alleges that the Stability Entities consented to jurisdiction in

7   California in *Anderson v. Stability AI, Ltd., et al.*, Case No. 3:23-cv-00210-WHO (N.D. Cal.)

8   ("Copyright Action") (Comp. ¶ 23), this is a red herring. Even putting aside that *Mostaque* never

9   consented to jurisdiction in the Copyright Action, consent to jurisdiction is case-specific and the

10  consent in the Copyright Action was expressly limited to that "action and any others raising

11  substantially similar claims arising under the Copyright Act, DMCA and/or Lanham Act." Keats

12  Decl. Ex. G. Hodes's assertion that as a result of the Copyright Action, the Stability Entities have

13  blanketly consented to jurisdiction in California, fails. *See, e.g.*, *Dow Chem. Co. v. Calderon*, 422

14  F.3d 827, 835 (9th Cir. 2005) ("[D]efense on the merits in a suit brought by one party cannot

15  constitute consent to suit as a defendant brought by different parties.").

16      As explained above, the allegation that Stability US has two principal places of business is

17  directly contradicted by both Mostaque's Declaration and settled law. *See* Mostaque Decl. ¶ 13;

18  *Hertz Corp.*, 559 U.S. at 92–93. Stability US's sole principal place of business is London. There is

19  therefore no general personal jurisdiction over either of the Stability Entities. Because the Stability

20  Entities have no California connection relating to Hodes's claims, there is no basis for specific

21  personal jurisdiction. Hodes does not even allege any conduct by the Stability Entities that supports

22  his alleged fraudulent inducement, negligent misrepresentation, unjust enrichment, or quantum

23  meruit claims. Finally, Hodes's reliance on California contacts *unrelated* to his claims, such as

24  Stability UK's California employees, can never establish specific personal jurisdiction. *See, e.g.*,

25  *Bristol-Myers Squibb*, 582 U.S. at 256 ("When no such connection [to the underlying controversy]

26  exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities

27  in the State."). Hodes has failed to allege any basis for the exercise of personal jurisdiction over the

28  Stability Entities. This Court should therefore dismiss each claim asserted against them.

1

**D.      Hodes Fails to State a Claim Upon Which Relief Can Be Granted**

2       Even assuming Hodes could establish personal jurisdiction over Defendants, all of his claims

3   should be dismissed for failure to state a claim upon which relief can be granted. Hodes's claims

4   turn mainly on the allegation that Mostaque failed to inform Hodes that he might consider pursuing

5   generative imaging as a business, in October 2021 and May 2022, and that Mostaque was speaking

6   to potential investors in May 2022. These bare allegations are insufficient as a matter of law to

7   establish that Mostaque committed fraud or violated any duty he allegedly owed to Hodes.

8                **1.      Delaware Law Governs All of Hodes's Claims**

9       Delaware law governs all of Hodes's claims. A federal court sitting in diversity applies the

10  choice of law rules of the forum state—here, California. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d

11  1180, 1187 (9th Cir. 2001). California has codified the "internal affairs doctrine," which requires a

12  court to apply the law of the state of incorporation to matters concerning a corporation's internal

13  affairs. Cal. Corp. Code § 2116; *Voss v. Sutardja*, No. 14-CV-01581-LHK, 2015 WL 349444, at *6

14  (N.D. Cal. Jan. 26, 2015) ("[T]he rights of shareholders in a foreign company . . .  are determined

15  by the law of the place where the company is incorporated."). Because each of Hodes's claims relate

16  to Mostaque's "purchase of shares or . . . other violation of official duty," Delaware law governs

17  each claim. Cal. Corp. Code § 2116; *see In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173,

18  1215 (N.D. Cal. 2007) (holding that "Delaware law, the law of the state of VeriSign's incorporation,

19  applies to all causes of action that implicate the Company's internal affairs, including the claims for

20  breach of fiduciary duty, accounting, unjust enrichment, rescission, constructive fraud, corporate

21  waste, breach of contract, gross mismanagement, and restitution.").

22                **2.      No Duty to Disclose**

23      Hodes bases his fraudulent inducement, negligent misrepresentation, breach of fiduciary

24  duty, and unjust enrichment claims on Mostaque's alleged breach of duty to disclose that:

25  (i) Stability AI was working on AI-powered text-to-image generation and; (ii) was seeking venture

26  capital funding. Compl. ¶¶ 130–168. But Hodes's claims run contrary to the express terms of the

27  applicable SPAs and well-settled law. Both dictate that Hodes had no right to the information that

28  underlie his claims.

1      Under the October 2020 SPA, the agreement by which Hodes acquired his 1,000,000 shares

2 in Stability US, Hodes specifically agreed that he "has no right to receive any information from the

3 Company by virtue of [his] purchase of the Stock, ownership of the Stock, or as a result of [him]

4 being a holder of record of stock of the Company." Keats Decl. Ex. B. This clear and unequivocal

5 contractual waiver of the right to receive information is enforceable under Delaware law. *See, e.g.*,

6 *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 567 (Del. Ch. 2023) ("[F]iduciary duties are not

7 immutable, mandatory terms but rather freely modifiable defaults."). Hodes, by his own account a

8 sophisticated party and investor, thus bargained away the right to the information he now alleges

9 was omitted.

10      But even if Hodes had not waived his right to company information (and he did), Delaware

11 law imposes no duty on Mostaque as a controlling shareholder or director to disclose future business

12 plans or preliminary fundraising negotiations. Majority shareholders and directors of a Delaware

13 corporation owe two fiduciary duties: care and loyalty. *See Stone ex rel. AmSouth Bancorporation*

14 *v. Ritter*, 911 A.2d 362, 370 (Del. 2006). "The duty of disclosure is not an independent duty, but

15 rather arises as 'the application in a specific context of the board's fiduciary duties.'" *New Enter.*

16 *Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 144 (Del. Ch. 2023). When a corporate fiduciary, like

17 Mostaque, "buys shares directly from . . . an existing outside stockholder," like Hodes, Delaware

18 courts apply the "special facts doctrine" to determine whether a disclosure duty existed. *In re*

19 *Wayport, Inc. Litig.*, 76 A.3d 296, 315 (Del. Ch. 2013).

20      The special facts doctrine states that "a director has a fiduciary duty to disclose information

21 in the context of a private stock sale only when a director is possessed of special knowledge of future

22 plans or secret resources and deliberately misleads a stockholder who is ignorant of them." *Id.*

23 (internal quotations omitted). Hodes therefore must show both: (i) that the omitted information was

24 of such a magnitude that it constitutes a "special fact" under Delaware law; and (ii) that Mostaque

25 secreted this information from Hodes to "deliberately mislead[]" him into selling his stock. *Id.* at

26 318 (noting that the special facts doctrine is a "conjunctive" test requiring both "special facts" and

27 "scienter"). Hodes fails to adequately allege either element.

28      "Under the 'special facts' doctrine, [Mostaque] w[as] free to purchase shares from other

1   [Stability US] stockholders, without any fiduciary duty to disclose information about the Company

2   or its prospects, unless the information related to an event of sufficient magnitude to constitute a

3   'special fact.'" *Id.* at 320. The threshold for a "special fact" is *higher* than that for information to be

4   considered material. *See id.* at 321 (holding that even a material omission "does not rise to the level

5   of a 'special fact'"). Indeed, to satisfy this special fact requirement, "a plaintiff generally must point

6   to knowledge of a substantial transaction, such as an offer for the whole company." *Id.* at 320, 322

7   (holding that the company's finalized patent sale for $9.5 million did not constitute a special fact

8   requiring disclosure); *see also Miracle Ventures I, LP v. Spear*, No. 21 CIV. 8941 (LGS), 2022 WL

9   16578962, at *5 (S.D.N.Y. Nov. 1, 2022) (holding that the directors' failure to disclose discussions

10  with a potential investor for a $65 million investment in the company did not constitute a special

11  fact). Under settled law, Hodes's allegations do not constitute material omissions, let alone rise to

12  the level of a special fact.

13          But this Court need not even determine whether the Stability Entities working on generative

14  AI-powered text-to-image generation "was material or special, because in either event it was not

15  omitted." *Wayport*, 76 A.3d at 321 ("The plaintiffs cannot maintain a claim for breach of the duty

16  of loyalty in a direct stock sale based on information they actually knew."); *see Lank v. Steiner*, 224

17  A.2d 242, 244 (Del. 1966). As the Complaint recognizes, Mostaque was publicly disclosing

18  information about this text-to-image generator before Hodes entered into either SPA. *See* Compl.

19  ¶ 88. Of course, despite reproducing these various public disclosures in his Complaint, Hodes

20  conveniently asserts that he did not follow Mostaque on Twitter—as if that somehow transforms

21  Mostaque's public disclosures into facts that were secretly hidden from Hodes.

22          Even if Mostaque had not publicly broadcast Stability AI's generative imaging experiments

23  to the world (he did), the Stability Entities' then-unproven and speculative generative AI efforts

24  were the classic example of information that is not required to be disclosed to shareholders.

25  "Delaware law does not require disclosure of inherently unreliable or speculative information which

26  would tend to confuse stockholders or inundate them with an overload of information." *Arnold v.*

27  *Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1280 (Del. 1994). At the time of Hodes's stock sales,

28  any disclosure by Mostaque would at best be the founder's opinion about the future success of an

1   untested product, in a field (generative AI) that was completely new and uncharted. *See In re NAHC,*

2   *Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) ("[S]tatement or omission must have been

3   misleading at the time it was made; liability cannot be imposed on the basis of subsequent events.").

4   Such statements would be "'too general to cause a reasonable investor to rely upon them.'" *In re*

5   *Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 109 (D.C. Cir. 2015) (quoting *ECA, Loc. 134*

6   *IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009)).

7   Nor could Mostaque (without exposing himself to liability) guarantee that the text-to-image

8   generation would be profitable or—as required by the special facts doctrine—would be so profitable

9   that it would "substantially affect[] the value of [Stability US's] stock." *Wayport*, 76 A.3d at 322.

10  That is why "companies do not have an obligation to offer an instantaneous update of every internal

11  development, especially when it involves the oft-tortuous path of product development." *Weston*

12  *Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022). The Stability Entities' efforts

13  to develop a generative AI platform, which at the time of the SPAs was barely a feasible concept

14  and had no formulated path to profitability, cannot constitute a special fact.

15          In any event, Hodes fails to allege any scienter on behalf of Mostaque as required by the

16  special facts doctrine. *See Howard v. Tanium, Inc.*, No. 21-CV-09703-JSC, 2023 WL 2095908, at

17  *7 (N.D. Cal. Feb. 17, 2023) ("Failure to provide every piece of information regarding a company's

18  operations is not the same as *intentionally concealing* a material fact to induce reliance.") (emphasis

19  in original). In fact, Hodes's admission that Mostaque publicly disclosed the text-to-image generator

20  to the entire world renders implausible any claim that Mostaque omitted this information to

21  deliberately mislead Hodes. *See Alberici v. Recro Pharma, Inc.*, No. CV 18-2279, 2020 WL 806719,

22  at *18 (E.D. Pa. Feb. 14, 2020) (finding company's public disclosure and plaintiffs' ability to

23  conduct their own verification process "undermines [their] position that [the directors] were acting

24  with the intent to defraud," even when the "alleged misstatements involved [the company's] lead

25  product"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (facts alleged must state a plausible

26  claim, not merely a possible one). Finally, it strains credulity for Hodes to suggest that Mostaque

27  deliberately misled Hodes into selling his stock when Hodes, by his own admission, was the one

28  who sought out Mostaque, had his own motivations for selling at the time he did (*i.e.*, his "personal

1    liability and reputation"), and was the one that set his own price. Compl. ¶ 6. Hodes was not misled,

2    he was the one leading.

3         Next, the alleged negotiations with venture capital firms (*see* Compl. ¶¶ 109-15) also do not

4    rise to the level of a special fact. "For purposes of Delaware law, the existence of preliminary

5    negotiations regarding a transaction generally becomes material once the parties 'have agreed on

6    the price and structure of the transaction.'" *Wayport*, 76 A.3d at 321. Nowhere in the Complaint

7    does Hodes allege that Stability US and the venture capital firms had, at the time of the SPAs,

8    reached an agreement on the price and structure of any investment. "Nor does the Complaint contain

9    any facts to support the inference that any investment contemplated as of [May 2022], would have

10   such an impact on [Stability US's] stock price that it constituted a special fact." *Miracle Ventures*,

11   2022 WL 16578962, at *5 (holding that discussions with potential investor did not constitute a

12   special fact). In fact, the eventual investment by the venture capital firms would have *diluted*

13   Hodes's ownership in Stability US. Stability US's "internal and generalized discussion of a potential

14   transaction" does not "qualify as material information" or "as a special fact." *In re Nine Sys.*

15   *Corporation Shareholders Litig.*, No. CIV.A. 3940-VCN, 2014 WL 4383127, at *58 (Del. Ch. Sept.

16   4, 2014), *aff'd sub nom. Fuchs v. Wren Holdings, LLC*, 129 A.3d 882 (Del. 2015).

17        Hodes's allegations fail to satisfy the "special facts" doctrine and Mostaque was under no

18   duty to disclose the allegedly omitted facts. *See Wayport*, 76 A.3d at 322, 315 ("If the [special facts

19   doctrine] is not met, then the director does not have a duty to speak and is liable only to the same

20   degree as a non-fiduciary would be."); *see also Air Prod. & Chemicals, Inc. v. Wiesemann*, 237 F.

21   Supp. 3d 192, 215 (D. Del. 2017) ("In an arms' length contractual setting like the negotiation of the

22   SPA, a party has no affirmative duty to speak."). Without an obligation to disclose, Mostaque cannot

23   be liable for their omission. *See Corp. Prop. Assocs. 14 Inc. v. CHR Holding Corp.*, No. CIV.A

24   3231-VCS, 2008 WL 963048, at *6 (Del. Ch. Apr. 10, 2008) ("[S]ilence about facts material to

25   another party is not fraud unless the party who remains silent has a duty to disclose those facts.").

26

27

28

### 3. No False or Misleading Representation

Hodes also alleges that Mostaque misled Hodes about the Stability Entities' work on an AI-powered climate change project and other projects. Compl. ¶¶ 12, 105. But Hodes never alleges that the Stability Entities were failing to develop these projects—nor could he plausibly do so since Mostaque in fact continued to work on both projects. *See Vatidis v. Trimble, Inc.*, No. CV 18-998 (MN), 2019 WL 3546693, at *3 (D. Del. Aug. 5, 2019) (dismissing fraudulent inducement claim because the plaintiff "fail[ed] to allege why each of the seven representations from the SPA was false at the time made."). Moreover, Hodes never alleges that Mostaque represented that those projects would be the *exclusive* focus of the Stability Entities. *See Promedev, LLC v. Wilson*, No. C22-1063JLR, 2023 WL 2330377, at *6 (W.D. Wash. Mar. 2, 2023) (holding that defendant's counterclaim "fail[ed] to plausibly allege that [plaintiff's] statements regarding its ownership were false" when the defendant "d[id] not allege that [plaintiff] ever represented that the Talbotts were the only owners, to the exclusion of all others"). Indeed, as Hodes acknowledges, the Stability Entities' purpose was "developing and leveraging AI models for a wide variety of use cases" and they engaged in multiple ongoing AI-related projects. Compl. ¶¶ 33, 38–40. That the generative AI project was ultimately the most successful and eventually became the Stability Entities' primary focus does not transform Mostaque's earlier statements about the other projects into misrepresentations. *See Fin Cap Inc. v. PayNerd LLC*, No. N21C-12-118 MMJ CCLD, 2023 WL 5543736, at *3 (Del. Super. Ct. Aug. 16, 2023) ("Merely alleging 'fraud by hindsight' is not sufficient to survive a motion to dismiss."). Hodes has not alleged an actionable misstatement.

Because Hodes does not adequately allege any actionable misrepresentation or omission, he fails to state a claim for fraudulent inducement, negligent representation, breach of fiduciary duty, and unjust enrichment. Additionally, and in any event, the claims against the Stability Entities must be dismissed insofar as Hodes attempts to shoehorn claims against them based on allegations that relate only to *Mostaque's* alleged conduct and duties. *See In re Nine Sys.*, 2014 WL 4383127, at *57 ("Under Delaware law, a corporation does not owe fiduciary duties to its stockholders; the board of directors and the officers do. Thus, the Company cannot be liable . . . for breach of fiduciary duty (or for fraud) for want of a fiduciary relationship that could give rise to a duty to speak."); *see also*

*United States v. Corinthian Colleges*, 655 F.3d 984, 997–98 (9th Cir. 2011) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

### 4.   No Justifiable Reliance

Hodes's fraudulent inducement and negligent misrepresentation claims also fail because Hodes has not sufficiently pled justifiable reliance. Far from being induced, Hodes, by his own admission, sought out Mostaque with the predetermined decision to sell his shares, and Hodes's reason for doing so—to allegedly protect his reputation—had nothing to do with any alleged misrepresentation or omission made by Mostaque. *See Wayport*, 76 A.3d at 325 ("The party that was the recipient of the information must in fact have acted or not acted in justifiable reliance on the representation."); *Arwood v. AW Site Servs., LLC*, No. CV 2019-0904-JRS, 2022 WL 705841, at *23 (Del. Ch. Mar. 9, 2022) ("One cannot secure redress for fraud where he or she acted in reliance on his or her own knowledge or judgment, and not on the representor's statements."). Additionally, the alleged inference that Hodes drew from Mostaque's alleged misrepresentations and omissions—that Stability AI lacked any possible path to success—is objectively unreasonable. *See Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, No. CV 7906-VCG, 2018 WL 6311829, at *33 (Del. Ch. Dec. 3, 2018) ("Whether reliance is justifiable is an objective standard."). Finally, Hodes cannot claim justifiable reliance because he could have easily discovered Mostaque's public disclosures, which by Hodes's own account included multiple Twitter posts discussing generative image AI. *See Tekstrom, Inc. v. Savla*, No. CIV.A. 05A-12-006 (JTV), 2006 WL 2338050, at *11 (Del. Super. Ct. July 31, 2006) ("To establish justifiable reliance, Savla must demonstrate he did not have either the awareness *or opportunity* to discover the accurate information"), *aff'd*, 918 A.2d 1171 (Del. 2007) (emphasis added).

### 5.   Hodes's Duplicative Claims Are Unavailable

Left grasping at straws, Hodes resorts to alleging additional causes of action duplicative of his failed breach of fiduciary duty claim. Indeed, on this basis, both his unjust enrichment and negligent misrepresentation claims must be dismissed. *See Urdan v. WR Cap. Partners, LLC*, 244

1    A.3d 668, 680 (Del. 2020) ("The plaintiffs have also run head on into established law that an unjust

2    enrichment claim should be dismissed if it duplicates a breach of fiduciary duty claim"); *Clark v.*

3    *Davenport*, No. CV 2017-0839-JTL, 2019 WL 3230928, at *14 (Del. Ch. July 18, 2019) ("When

4    the special relationship involves allegations of fiduciary breach, then the claim for equitable fraud

5    is subsumed in the claim for breach of fiduciary duty.").

6         Hodes's claims for unjust enrichment and quantum merit must also be dismissed because

7    many contracts govern the parties' relationship. *See Accelerant Twister, LLC v. Marjo, LLC*, No. CV

8    22-1366-RGA, 2023 WL 4457422, at *9 (D. Del. July 11, 2023) ("A claim for unjust enrichment is

9    not available if there is a contract that governs the relationship between parties that gives rise to the

10   unjust enrichment claim."); *Ameristar Casinos, Inc. v. Resorts Int'l Holdings, LLC*, No. CIV.A.

11   3685-VCS, 2010 WL 1875631, at *13 (Del. Ch. May 11, 2010) ("Because the Purchase Agreement

12   governs the subject of the parties' dispute, [plaintiff's] claims for . . . quantum meruit must be

13   dismissed"). The relationship between Hodes and Mostaque is governed by the October 2021 and

14   May 2022 SPAs, and Hodes's relationship with Stability US is governed by his Consulting

15   Agreement.

16        Finally, Hodes's alternative claim for quantum meruit is foreclosed by: (1) the SPAs and

17   Hodes's Consulting Agreement specifying his compensation for work performed; and (2) the fact

18   that Hodes was already compensated for his services by his initial receipt of the Stability US shares

19   in 2020. *See, e.g.*, *Griffin Dewatering Corp. v. B.W. Knox Const. Corp.*, No. CIV. A. 98L-09-008,

20   2001 WL 541476, at *7 (Del. Super. Ct. May 14, 2001) (dismissing quantum merit claim where

21   there was payment for the work performed). Hodes's decision to later depart with that compensation

22   does not undue the initial payment.

## CONCLUSION

23        Hodes repeats throughout his Complaint that Mostaque's purchase of Hodes's shares

24   "epitomizes corporate greed at its worse." Compl. ¶¶ 1, 123. But the true corporate greed lies with

25   Hodes, who jumped ship during the Stability Entities' low point but now, more than a year later,

26   demands 15% of Stability US after a successful pivot that Hodes concedes he had nothing to do

27   with. For all the reasons discussed above, this Court should dismiss his Complaint. This Court does

1    not have personal jurisdiction over any of the Defendants. Even if it did, Hodes fails to adequately

2    assert a claim upon which relief can be granted and Mostaque cannot feasibly be joined. This Court

3    should therefore dismiss each cause of action with prejudice.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2   Dated: October 16, 2023                    Respectfully submitted,

3                                              *s/ Christopher J. Wiener*

4                                              Jeffrey G. Knowles (State Bar No. 129754)
                                               Christopher J. Wiener (State Bar No. 280476)
5                                              Bina G. Patel (State Bar No. 315352)
                                               **Coblentz Patch Duffy & Bass LLP**
6                                              One Montgomery Street, Suite 3000
                                               San Francisco, California 94104-5500
7                                              Telephone: 415.391.4800
                                               Facsimile: 415.989.1663
8                                              Email:     ef-jgk@cpdb.com
9                                                         ef-cjw@cpdb.com
                                                          ef-bgp@coblentzlaw.com
10

11                                             Michael C. Keats (*pro hac vice*)
                                               Samuel M. Light (*pro hac vice*)
12                                             Nicholas D. Winkley (*pro hac vice*)
                                               **Fried Frank Harris Shriver**
13                                               **& Jacobson LLP**
                                               One New York Plaza
14                                             New York, NY 10004
                                               Telephone: (212) 859-8000
15                                             Email: michael.keats@friedfrank.com
16                                                     samuel.light@friedfrank.com
                                                       nicholas.winkley@friedfrank.com
17

18                                             *Counsel for Defendants Mohammad Emad*
                                               *Mostaque, Stability AI, Inc., and Stability AI*
19                                             *Ltd.*

20

21

22

23

24

25

26

27

28